UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA, *ex rel.*
BOAZ HIRSHBERG,

        Plaintiff,

v.

ANAYA GEMS, INC.; DIALUCK CORP., a d/b/a
of ANAYA GEMS, INC.; OTC INT'L, INC., a
d/b/a of ANAYA GEMS, INC.; ANTRIX
DIAMOND EXPORTS, LTD.; DNM
JEWELRY INC.; SHUBH DIAMONDS EXPORTS
PRIVATE, LTD.; SDC DESIGNS, LLC; DIAM
TRADE CORP.; SUPER DIAMOND, a d/b/a of
SDC DESIGNS, LLC; AJAY GANDHI,
a principal of ANAYA GEMS, INC.; ANSHUL
GANDHI, a principal of ANAYA GEMS, INC.;
MANJUSAKA JEWELERS CO., LTD.; and
LA VIE PREMIUM LTD.;

        Defendants.

-----------------------------------------------------------X

**18 CV 3042**

**RELATOR'S COMPLAINT**

**FILED UNDER SEAL**

JURY TRIAL DEMANDED

Plaintiff-Relator Boaz Hirshberg, by his attorney, Heidi A. Wendel, Law Office of Heidi A. Wendel PLLC, files this Complaint on behalf of the United States of America, alleging upon information and belief as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff brings this action seeking treble damages and penalties against defendant Anaya Gems, Inc. ("Anaya Gems"), its owners, affiliates, and co-conspirators (collectively "Defendants") under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA"), based on Defendants' knowing and fraudulent evasion of millions of dollars in customs duties owed on diamond jewelry imported into the United States by Anaya Gems. As set forth more fully below,

Plaintiff-Relator alleges that between 2008 and the present (the "relevant time-period"), Anaya Gems, an importer of jewelry manufactured in HongKong and Thailand, along with its owners, affiliates and co-conspirators, defrauded the United States by perpetrating a scheme whereby Anaya Gems and its owners and affiliates, with the assistance of its co-conspirators, falsely underreported to the U.S. Customs and Border Protection ("CBP") the value of jewelry Anaya Gems imported into the United States. Through the fraudulent scheme, Anaya Gems avoided paying millions of dollars in customs duties.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under the FCA pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3730(a), as well as pursuant to the Court's general equitable jurisdiction.

3. Venue is appropriate in this District pursuant to 31 U.S.C. § 3732(a) because one or more of the defendants can be found, reside, or transact business in this District, and/or acts proscribed by 31 U.S.C. § 3729 occurred. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(c) with respect to claims against those defendants who are subject to the Court's personal jurisdiction with respect to this action.

## THE PARTIES

4. Plaintiff-Relator Boaz Hirshberg is a resident of Nassau County, New York, who has been employed by Anaya Gems since 2008.

5. Defendant Anaya Gems, Inc. ("Anaya Gems") is a New York corporation with its principal place of business at 31-00 47th Avenue, Long Island City, New York 11101. Anaya

Gems was incorporated in or about 2008. Anaya Gems does a substantial amount of business in Manhattan, the Bronx, and Westchester County as further discussed below. This business was and is in furtherance of the fraudulent scheme at issue in this Complaint.

6. Defendants Dialuck Corporation and OTC International are New York corporations. These corporations are d/b/a's of Anaya Gems.

7. Defendant Antrix Diamond Exports Limited ("Antrix India") is a foreign business corporation that shares ownership and management with Anaya Gems and has an office address and/or an address for service of process at 608 Fifth Avenue, Suite 501, New York, NY 10020. Antrix Diamond Exports Ltd. ("Antrix New York"), is, or at one time was, a business incorporated in New York State, with the same or overlapping ownership and control as Antrix India.

8. Defendant DNM Jewelry Inc. ("DNM") is a New York corporation with its principal place of business at 7 West 45th Street, Suite 1205, New York, New York 10036. DNM shares ownership and management with Anaya Gems.

9. Defendant Diam Trade Corp. is a New York corporation that is located at the same offices and premises as DNM, namely 7 West 45th Street, Suite 1205, New York, New York 10036.

10. Defendant Shubh Diamond Exports Private, Ltd. ("Shubh") is a foreign business corporation that shares ownership and management with Anaya Gems. Shubh has the same principal address as Antrix India.

11. Defendant SDC Designs LLC ("SDC Designs"), a New York corporation with an address at 6 E. 45th Street, Suite 901, New York, NY 10017.

3

12. Super Diamond is a d/b/a of SDC Designs that is located at 30-30 47th Avenue, Suite 520, New York, NY 11101.

13. Defendant Ajay Gandhi is a principal of Anaya Gems, Dialuck, OTC International, Antrix India, Antrix New York, DNM, and Diam Trade, among other companies affiliated with Anaya Gems. Ajay Gandhi has control over the operations of these companies, among other affiliated companies, including those named as defendants.

14. Defendant Anshul Gandhi is the son of defendant Ajay Gandhi and the Chief Executive Officer of Anaya Gems, Dialuck and OTC International, with control over the operations of these companies, among other affiliated companies, including those named as defendants in this Complaint.

15. Defendant Manjusaka Jewelers Co., Ltd. ("Manjusaka") is a manufacturing company with offices at Unit 08, 12th Floor, Tower A Focal Industries Centre, 21 Man Lok Street, Hung Hom, Kowloon, Hong Kong, that participated in the fraudulent scheme along with Anaya Gems and its owners and affiliated companies, which are named as defendants in this Complaint. Defendant Manjusaka is a co-conspirator with Anaya Gems and the owners and affiliates of Anaya Gems in carrying out Anaya Gems' fraudulent scheme to defraud CBP with respect to imports to Anaya Gems from Manjusaka.

16. Defendant La Vie Premium Ltd. ("La Vie") is a jewelry manufacturer with offices at RM 30-31, 4/F, Block B, Focal Industries Centre, 21 Man Lok Street, Hung Hom, Kowloon, Hong Kong. Defendant La Vie is a co-conspirator with Anaya Gems and the owners and affiliates of Anaya Gems in carrying out Anaya Gems' fraudulent scheme to defraud CBP with respect to imports to Anaya Gems from La Vie.

## FACTS

**1. Payment of Custom Duties**

17. For all merchandise imported into the United States, an importer or its agent must, using reasonable care, file appropriate documents with CBP that allow CBP to assess the customs duties due on the merchandise. 19 U.S.C. § 1484(a)(1)(B).

18. The documents required to be filed with CBP include, among other things, (i) an entry summary (CBP Form 7501) that declares the value of the merchandise and the applicable duty rate, and (ii) a commercial invoice that provides verification of the value of the merchandise. *See, e.g.,* 19 C.F.R. §§ 141.0a, 141.19(a), 141.81, 141.86(a), 142.3(a), 142.6(a). Generally, the importer is required to deposit estimated duties with CBP at the time of entry. 19 U.S.C. § 1505; 19 C.F.R. § 141.101. The amount of customs duty owed is equal to the value of the imported merchandise multiplied by the applicable duty rate.

19. The value or approximate value of the imported merchandise must be declared in the commercial invoice and entry summary. Federal law provides that every importer must file a declaration stating that the values set forth on these documents are accurate. 19 U.S.C. § 1485.

20. The entry summary thus includes a declaration that "the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities . . . and are true and correct . . . [and that the declarant] will immediately furnish to the appropriate CBP officer any information showing a different statement of facts." CBP Form 7501.

## 2. The Fraudulent Scheme

### a. General Overview of Anaya Gems' Business

21. Anaya Gems is in the business of selling jewelry, including diamond necklaces, bracelets, earrings and rings, among other types of jewelry, to retailers in the United States. Its customers include, or, during the relevant time-period, included Sterling Jewelers, Kay Jewelers, Zales Jewelers, J.C. Penney, KMart, Sears, Walmart, Army and Navy Stores, and Kohl's, among others. Jewelry imported by Anaya Gems is, and during the relevant time-period was, sold at retail stores in Manhattan, the Bronx, and Westchester County, among other locations.

22. Anaya Gems imports the finished jewelry from manufacturing companies in Hong Kong and Thailand. The primary Hong Kong manufacturer from which Anaya Gems imported jewelry is defendant Manjusaka Jewelers Co., Ltd. ("Manjusaka"). During the relevant time-period, Anaya Gems imported well over $20 million worth of diamond and other jewelry from Manjusaka through hundreds of shipments. Anaya Gems also imported millions of dollars' worth of diamond and other jewelry from La Vie Premium Ltd. ("La Vie"), another Hong Kong-based jewelry manufacturer.

23. In addition, during the relevant time-period, Anaya Gems imported well over $20 million worth of diamond and other jewelry from manufacturers in Thailand through hundreds of shipments. The primary Thai manufacturer from which Anaya Gems imported jewelry was Beauty Gems Factory Co., Ltd. ("Beauty Gems") which has offices in Bangkok, Thailand. In addition, Anaya Gems imported millions of dollars' worth of diamond and other jewelry from other Thailand-based manufacturers, including Regal Jewelry Manufacture Co., Ltd. ("Regal"), and Gem Creations, among others.

6

24. The diamonds used by the manufacturers in the jewelry were exported to them in many or all instances by companies, such as Antrix India, with common ownership with, or that are otherwise affiliated with, Anaya Gems.

25. Anaya Gems is invoiced by the manufacturers for the jewelry that Anaya Gems imports to the United States. These invoices contain the price charged to Anaya Gems by the manufacturers for the shipment and generally indicate the type of jewelry shipped and other specifics about the jewelry in the shipment. The invoices are presented to CBP by Anaya Gems as verification of the value of the merchandise imported and are attached by Anaya Gems, or its agent at Anaya Gems' instruction, to the entry summaries for the imports.

**b.      Anaya Gems' Fraudulent Understatement of the Value of the Imports**

   **1.    Anaya Gems' Understatement to CBP of the Value of the Jewelry it Imported from Hong Kong**

26. Anaya Gems underpaid import duties on jewelry it imported from manufacturers in Hong Kong, including Manjusaka and La Vie, by failing to report any value for the diamonds that were included in the jewelry. With respect to imports by Anaya Gems from Manjusaka and La Vie, the entry summaries submitted to CBP by Anaya Gems, through its agent, contained no amount for the value of the diamonds in the jewelry. The invoices from Manjusaka and La Vie to Anaya Gems, which were attached to the entry summaries to verify the value of the jewelry being imported, similarly contain no amount for the value of the diamonds in the jewelry.

27. Anaya Gems deliberately submitted entry documents that failed to include any amount for the value of the diamonds to avoid paying customs duties on the diamonds it was importing as part of the jewelry. In most cases, the value of the diamonds was a significant part of the total value of the jewelry. By failing to report the value of the diamonds in the jewelry it imported, Anaya Gems greatly underreported the value of its imports from Manjusaka and La

7

Vie. Anaya Gems submitted false entry summaries and invoices that understated the value of the imported jewelry with the intention and expectation that the Government would reasonably rely on the false values stated on the entry documents.

28. The Government relied on Anaya Gems' false entry documents, including Defendants' fraudulently estimated duty payments, in assessing and collecting duty.

29. Anaya Gems maintained and used computer records with the true value of the jewelry being imported by Anaya Gems, including the value of the diamonds it failed to report to CBP. The purpose of these records was, among other things, to determine the price Anaya Gems should charge its customers for the jewelry. The computer records include the duty that would have been owed if the true value of the jewelry had been reported to the Government for payment of duties. That calculated amount of duties, rather than the duties actually paid by Anaya Gems based on the false entry documents, was used to determine the price that would be charged to Anaya Gems' customers for the jewelry.

30. By knowingly submitting the false entry documents to CBP, and by failing to disclose the true value of the jewelry it was importing, Anaya Gems avoided payment of its customs duty obligations on a substantial part of the value of the jewelry it imported from Manjusaka and La Vie. Examples of the fraud are set forth below.

31. Example 1: By fraudulently misrepresenting the value of jewelry imported on or about July 23, 2017 from Manjusaka, Anaya Gems underpaid more than $47,000 in customs duties on jewelry worth approximately $1.5 million, based on Anaya Gems' own records.

32. The entry summary (attached hereto as Exhibit A.1) that Anaya Gems submitted to CBP for the jewelry reported that its value was $756,146. As shown on the entry summary, Anaya Gems paid duties of $38,322.71 on the jewelry.

8

33. However, based on Anaya Gems' records, attached hereto as Exhibit A.2, the true value of the jewelry was $1,509,266.65 and the customs duties that should have been paid on the jewelry were $86,179.15. *See* Exhibit A.3.

34. The invoices from Manjusaka to Anaya Gems attached to the entry documents to verify the value of the jewelry show that the difference in value was due to Anaya Gems' intentional failure to include any amount in the entry documents for the value of the diamonds included in the jewelry. Although at least some of the jewelry covered by the entry summary was described in the invoices as "Diamond-Ear Ring," "Diamond-Necklace," and "Diamond-Bracelet," there is no valuation provided for the diamonds on the invoices from Manjusaka to Anaya Gems, except for tiny amounts for sample jewelry and/or jewelry that was returned for repairs.

35. Example 2: Similarly, by fraudulently misrepresenting the value of jewelry imported on or about August 20, 2017 from Manjusaka, Anaya Gems underpaid approximately $50,000 in customs duties on jewelry worth approximately $1.5 million, based on Anaya Gems' own records.

36. The entry summary (attached hereto as Exhibit B.1) that Anaya Gems submitted to CPB for the jewelry reported that its value was $743,110. As shown on the entry summary, Anaya Gems paid duties of $37,569.10 on the jewelry.

37. However, based on Anaya Gems' records, attached hereto as Exhibit B.2, the true value of the jewelry was $1,526,649.99 and the customs duties that should have been paid on the jewelry were $87,171.71. *See* Exhibit B.3.

38. The invoices from Manjusaka to Anaya Gems attached to the entry summary for the jewelry show that the difference in value was due to Anaya Gems' intentional failure to

include in the entry summary the value of the diamonds included in the jewelry. For example, although at least some of the jewelry covered by the entry summary was described in the invoices as "Diamond-Ear Ring," "Diamond-Pendant," and "Diamond-Bracelet," there is no valuation provided for the diamonds on the invoices from Manjusaka to Anaya Gems, with the exception of tiny amounts for diamonds and/or cubic zirconia in samples and/or for jewelry returned for repairs.

39. <u>Example 3</u>: Likewise, by fraudulently misrepresenting the value of jewelry imported on or about October 22, 2017 from Manjusaka, Anaya Gems underpaid approximately $50,000 in customs duties on jewelry worth approximately $1.38 million, based on Anaya Gems' records.

40. The entry summary (attached hereto as Exhibit C.1) that Anaya Gems submitted to CBP for the jewelry reported that its value was $563,749. As shown on the entry summary, Anaya Gems paid duties of $28,485.65 on the jewelry.

41. However, based on Anaya Gems' records, attached hereto as Exhibit C.2, the true value of the jewelry was approximately $1.38 million and the customs duties that should have been paid on the jewelry were approximately $79,000. *See* Exhibit C.3.

42. The invoices from Manjusaka to Anaya Gems attached to the entry summary for the jewelry show that the difference in value was due to Anaya Gems' intentional failure to include any amount in the entry summary for the value of the diamonds included in the jewelry. For example, although at least some of the jewelry covered by the entry summary was described in the invoices as "Diamond-Earring" and "Diamond-Pendant," there is no valuation provided for the diamonds on the invoices from Manjusaka to Anaya Gems.

10

43.     Example 4: In addition, by fraudulently misrepresenting the value of jewelry imported on or about November 26, 2017 from Manjusaka, Anaya Gems underpaid approximately $9,000 in customs duties on jewelry worth approximately $500,000, based on Anaya Gems' records.

44.     The entry summary (attached hereto as Exhibit D.1) that Anaya Gems submitted to CBP for the jewelry reported that its value was $367,364. As shown on the entry summary, Anaya Gems paid duties of $20,066.33 on the jewelry.

45.     However, based on Anaya Gems' records, attached hereto as Exhibit D.2, the true value of the jewelry was approximately $512,411.20 and the customs duties that should have been paid on the jewelry were approximately $29,260.33. *See* Exhibit D.3.

46.     The invoices from Manjusaka to Anaya Gems attached to the entry summary for the jewelry show that the difference in value was due to Anaya Gems' intentional failure to include any amount in the entry summary for the value of the diamonds included in the jewelry. For example, although at least some of the jewelry covered by the entry summary was described in the invoices as "Diamond-Earring," "Diamond-Pendant," and "Diamond-Bracelet," there is no valuation provided for the diamonds on the invoices from Manjusaka to Anaya Gems, except for tiny amounts for samples and/or repairs.

   **2.    Anaya Gems' Understatement to CBP of the Value of the Jewelry it Imported from Thailand**

47.     To defraud the United States of customs duties, Anaya Gems also underreported to CBP the value of jewelry it imported from Thailand, including jewelry it imported from Beauty Gems Factory Co., Ltd. ("Beauty Gems"), Regal Jewelry Manufacture Co., Ltd. ("Regal"), and Gem Creation among others. On entry summaries and attached documents it submitted to CBP with respect to imports from Beauty Gems, Regal, Gem Creation, and other

manufacturing companies in Thailand, Anaya Gems frequently grossly understated the value of the diamonds in the jewelry to avoid customs duties on the full value of the jewelry. In the many instances in which the diamonds used in the jewelry manufactured by these companies were imported from India or elsewhere, Anaya Gems reported to CBP only 35% of the value of the diamonds included in the finished jewelry it imported from the manufacturing companies. Anaya Gems failed to report or pay customs duties on 65% of the value of the diamonds in the jewelry it imported from those companies in Thailand in these instances.

48. Anaya Gems submitted false entry summaries and invoices that understated the value of the imported jewelry with the intention and expectation that the Government would reasonably rely on the false values stated on the entry documents.

49. The Government relied on Anaya Gems' false entry documents, including its fraudulently estimated duty payments, in assessing and collecting duty.

50. Anaya Gems maintained and used computer records with the true value of the jewelry being imported by Anaya Gems, including the value of the diamonds it failed to report to CBP. The purpose of these records was, among other things, to determine the price Anaya Gems should charge its customers for the jewelry. The computer records included the duty that would have been owed if the true value of the jewelry had been reported to the Government for payment of duties. That amount of duties, rather than the duties actually paid by Anaya Gems based on the false entry documents, was used to determine the price that would be charged to Anaya Gems' customers for the jewelry.

51. By knowingly submitting the false entry documents to CBP, and by failing to disclose the true value of the jewelry it was importing, Anaya Gems avoided payment of its

customs duty obligations on the full value of the jewelry it imported from Beauty Gems and Regal, among other manufacturing companies in Thailand.

52. Anaya Gems paid the other 65% of the value of the diamonds in the jewelry imported from Beauty Gems, Regal, and other manufacturers in Thailand separately. In this manner, Anaya Gems paid customs duties to the United States on only 35% of the value of the diamonds. For example, the additional amounts owed by Anaya Gems for the diamonds imported from Beauty Gems during the period August 2017 through December 2017 were for each month, respectively, $92,898.58; $256,701.74; $323,142.97; $100,536,86; $16,770.77. Thus, for that four-month period alone, Anaya Gems failed to pay duties on $790,050.92 worth of jewelry imported from Beauty Gems by underreporting the value of the diamonds in the jewelry.

### c. Role Played by Owners, Parents, Affiliates and Successors of Anaya Gems

53. The principals of Anaya Gems, including Defendants Ajay Gandhi and Anshul Gandhi, knowingly perpetrated the fraud to avoid customs duties and enrich themselves.

54. Defendant Antrix India, in which Ajay Gandhi and/or Anshul Gandhi are also principals, was knowingly involved in the fraudulent scheme. Antrix India, among other related companies with the same principals, exports diamonds from India to the manufacturers in Hong Kong and Thailand from which Anaya Gems imports finished jewelry. Among other roles in the fraud, Anaya Gems remitted payment to Antrix India, and its related companies, including Antrix New York, for the 65% of the value of the diamonds in the jewelry Anaya Gems imported from Beauty Gems that was not reported to CBP on the entry summaries. Internal emails providing instructions on remitting the payments attach invoices for the diamonds from Defendant Shubh to Defendant DNM.

55. Funds were moved by the principals of Anaya Gems among their related companies, including DNM, Diam Trade, Antrix India, Antrix New York, and Shubh, for fraudulent purposes, without regard to their separate corporate status.

56. At some point in late 2017, Anaya Gems and SDC Designs created the d/b/a Super Diamond in part to perpetuate the fraud. The two top salespeople of Anaya Gems moved to Super Diamond, and Anaya Gems attempted to move its customers to Super Diamond, with partial success.

## FIRST CLAIM

### Violations of the False Claims Act
### (31 U.S.C. § 3729(a)(7) (2006), and as amended, 31 U.S.C. § 3729(a)(1)(G))
### Reverse False Claims

57. Plaintiff-Relator incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

58. On behalf of the Government, Plaintiff-Relator seeks relief against Defendants under Section 3729(a)(7) of the False Claims Act, 31 U.S.C. § 3729(a)(7) (2006), and, as amended, Section 3729(a)(1)(G) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

59. As set forth above, Defendants knowingly made, used, or caused to be made or used false records and/or statements to conceal, avoid, or decrease obligations to pay or transmit money or property, in the form of customs duties, to the United States.

60. The Government incurred losses relating to customs duties wrongfully underpaid by Defendants because of their wrongful and fraudulent conduct.

61. By virtue of the false records or statements made by Defendants, the Government suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, and a civil penalty as required by law for each violation.

## **SECOND CLAIM**

### **Common Law Fraud**

62. Plaintiff-Relator incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

63. Defendants knowingly made material misrepresentations and/or material omissions of fact to the Government in connection with the importation of jewelry and/or other merchandise into the United States.

64. Defendants intended that the Government would rely upon those false representations and/or omissions.

65. The Government did, in fact, rely upon those false representations and/or omissions.

66. Defendants' actions caused the United States to be damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff-Relator, on behalf of the Government, respectfully requests that judgment be entered in its favor and against Defendants as follows:

    a. On the First Claims for Relief (Violation of the False Claims Act), treble the Government's damages in an amount to be determined at trial, such civil penalties as are required by law, and an aware of costs pursuant to 31 U.S.C. § 3729(a);

    b. On the Second Claim for Relief (Common Law Fraud), the Government's damages in an amount to be determined at trial, together with costs and interest;

    c. Such further relief as is proper.

Dated: New York, New York
      April 6, 2018

BY: *[signature]*
HEIDI A. WENDEL (HW-2854)
Law Office of Heidi A. Wendel PLLC
43 West 43rd Street, Suite 184
New York, NY 10036
Tel. No.: (917) 854-1645
hwendel@heidiwendellaw.com