AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
By:     JEFFREY K. POWELL
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel.: (212) 637-2706
Email: jeffrey.powell@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* BOAZ HIRSHBERG,<br><br>               Plaintiff,<br><br>      v.<br><br>ANAYA GEMS, INC.; DIALUCK CORP., a  d/b/a of ANAYA GEMS, INC.; OTC INT'L, INC., a d/b/a of ANAYA GEMS, INC.; ANTRIX DIAMOND EXPORTS, LTD.; DNM JEWELRY INC.; SHUBH DIAMONDS , EXPORTS PRIVATE, LTD.; SDC DESIGNS, LLC; DIAM TRADE CORP.; SUPER DIAMOND, a d/b/a of SDC DESIGNS, LLC; AJAY GANDHI, a principal of ANAYA GEMS, INC.; ANSHUL GANDHI, a principal of ANAYA GEMS, INC.; MANJUSAKA JEWELERS CO., LTD.; and LA VIE PREMIUM LTD.;<br><br>           Defendants. | **18 Civ. 3042 (ER)**<br><br>**COMPLAINT-IN-INTERVENTION OF THE UNITED STATES OF AMERICA**<br><br>**JURY TRIAL DEMANDED** |

| |
|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff-Intervenor,<br><br>      v.<br><br>ANAYA GEMS, INC. and ANSHUL GANDHI,<br><br>          Defendants. |

Plaintiff the United States of America (the "United States" or the "Government"), by its attorney, Audrey Strauss, Acting United States Attorney for the Southern District of New York, alleges for its Complaint-In-Intervention as follows:

## PRELIMINARY STATEMENT

1.      The Government brings this civil fraud lawsuit seeking damages and penalties against Anaya Gems, Inc. ("Anaya Gems") and Anshul Gandhi ("Gandhi") (collectively "Defendants") under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").  From 2010 through 2017 (the "Relevant Period"), Anaya Gems, with the knowledge and involvement of Gandhi, defrauded the United States by materially underreporting to U.S. Customs and Border Protection ("CBP"), a component of the U.S. Department of Homeland Security, the value of jewelry containing diamonds that was imported from Hong Kong and Thailand, and submitted, or caused to be submitted, false entry summaries and invoices to CBP to avoid paying customs duties owed in violation of the FCA.  By engaging in a fraudulent scheme to understate the value of the imported jewelry, Defendants defrauded the United States out of millions of dollars in customs duties.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the claims pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C. §§ 1331 and 1345.

3.      This Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which provides for nationwide service of process.

4.      Venue lies in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) because Defendants transacted business in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

5.      No official of the United States charged with responsibility to act in the circumstances knew or should have known of the facts material to the FCA claims related to the fraudulent billing practices alleged herein prior to April 2018.

## PARTIES

6.      Plaintiff is the United States of America.

7.      Relator Boaz Hirshberg is a former employee of Anaya Gems and resides in Nassau County, New York.  In April 2018, Relator filed an action pursuant to the FCA alleging, *inter alia*, that Defendants falsely underreported to CBP the value of jewelry containing diamonds that was imported into the United States.

8.      During the Relevant Period, Defendant Anaya Gems was a New York corporation, and its primary place of business was in Long Island City, New York.  Anaya Gems conducted a substantial amount of business in Manhattan, the Bronx, and Westchester County.

9.      Defendant Gandhi was the president and part owner of Anaya Gems during the Relevant Period.  Gandhi was closely involved in overseeing the day-to-day operations of Anaya Gems.

## FACTUAL BACKGROUND

### I.  Import Entry Reporting Obligations and Payment of Customs Duties

10.      All merchandise imported into the United States is required to be "entered," unless specifically excepted.  19 C.F.R. § 141.4(a); 19 U.S.C. § 1484.  "Entry" means, among other things, the documentation or data that must be filed with an officer of CBP that allow the agency to assess the customs duties due on merchandise being imported into the United States. 19 C.F.R. § 141.0a(a).

11.     The documents required to be filed with CBP in order to complete entry include, among other things: (i) an entry summary (CBP Form 7501) that declares the value of the merchandise and the applicable duty rate; and (ii) a commercial invoice that provides verification of the value of the merchandise.  *See, e.g.*, 19 C.F.R. §§ 141.0a, 141.19(a), 141.81, 141.86(a), 142.3(a), 142.6(a).

12.     Pursuant to 19 U.S.C. § 1484, the entity serving as "importer of record" is responsible for paying the customs duty and using reasonable care in making and providing accurate documentation to CBP that allows the agency to assess the customs duties due on the merchandise.  19 U.S.C. § 1484(a)(1)(B).

13.     Generally, the importer of record is required to deposit estimated duties with CBP at the time of entry.  19 U.S.C. § 1505; 19 C.F.R. § 141.101.  In most cases, the amount of customs duty owed is equal to the value of the imported merchandise multiplied by the applicable duty rate.

14.     The value or approximate value of the imported merchandise must be declared in the commercial invoice and entry summary.  Federal law provides that every importer of record must file a declaration stating that the values set forth on these documents are accurate. 19 U.S.C. § 1485.

15.     Generally, importers of record are required to declare the "transaction value" of the goods, which is the price actually paid or payable for the merchandise plus, if applicable, certain additional costs incurred with respect to the merchandise.  19 U.S.C. § 1401a(a)(1)(A), (b).

16.     The entry summary form includes a declaration that "the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices,

values, quantities . . . and are true and correct" and that the declarant "will immediately furnish to the appropriate CBP officer any information showing a different statement of facts."  CBP Form 7501.

17.     Anaya Gems, like many other importers of record, used a customs broker to assist it in clearing goods for entry by preparing the entry summary and other necessary paperwork and calculating taxes and duties.  The customs broker completed the entry summary based on the information, including invoices, provided by Anaya Gems, which is responsible for the accuracy of the information reported to CBP.

**II.  Anaya Gems' Business**

18.     During the Relevant Period, Anaya Gems was engaged in the business of selling jewelry, including necklaces, pendants, bracelets, earrings, and rings, to retailers in the United States.  Anaya Gems' customers included Sterling Jewelers, Kay Jewelers, Zales Jewelers, J.C. Penney, Kmart, Sears, Walmart, Army and Navy stores, and Kohl's.  Anaya Gems sold jewelry to retailers located in Manhattan, the Bronx, and Westchester County, among other locations throughout the country.  Anaya Gems also sold jewelry online through the website www.netaya.com.

19.     During the Relevant Period, Anaya Gems imported jewelry from, among other places, Hong Kong and Thailand, including jewelry containing diamonds (herein referred to as "Jewelry") that was worth tens of millions of dollars in total.

20.     Anaya Gems imported Jewelry from manufacturers based in Hong Kong, including MJ Manjusaka Jewelers Co., Ltd. ("Manjusaka") and La Vie Premium Ltd. ("La Vie"). Anaya Gems also imported Jewelry from manufacturers based in Thailand, including Beauty

Gems Factory Co., Ltd. ("Beauty Gems"), Regal Jewelry Manufacture Co., Ltd. ("Regal"), and Gems Creations Limited ("Gems Creations").

21.     The diamonds used in the Jewelry assembled by these manufacturers were obtained from companies that shared common ownership with Anaya Gems, including India-based companies Antrix Diamond Exports, Ltd. ("Antrix"), Shubh Exports, and Netaya Jewels PVT Ltd. (collectively "Diamond Suppliers").   Defendant Gandhi's family members, including his father, owned, operated and/or controlled the Diamond Suppliers.  Antrix had an ownership interest in Anaya Gems.

22.     Gandhi was personally involved in procuring diamonds for the Diamond Suppliers.

23.     The Diamond Suppliers billed and sent invoices to Anaya Gems—as well as to DNM Jewelry Inc. and Diam Trade Corp. which did business with Anaya Gems—for the cost of the diamonds shipped to the manufacturers.  Gandhi was copied on communications transmitting these invoices, and Anaya Gems, DNM Jewelery Inc., and Diam Trade Corp. made payments to the Diamond Suppliers.

24.      Anaya Gems staff recorded the actual costs of the diamonds contained in the Jewelry in its accounting systems.

25.     The Hong Kong and Thailand manufacturers used the diamonds provided by the Diamond Suppliers to create the finished Jewelry that was exported to Anaya Gems.  The manufacturers were not billed for, and did not pay for, the diamonds that they used to assemble the finished Jewelry.

26.      Gandhi was closely involved in managing the day-to-day operations of Anaya Gems.  Gandhi knew how much Anaya Gems paid for the shipments of Jewelry imported from

Hong Kong and Thailand, and directed and approved the specific payments made to the manufacturers. Gandhi also knew that Anaya Gems was invoiced for the costs of the diamonds provided by the Diamond Suppliers to the manufacturers, and that the manufacturers did not pay the Diamond Suppliers for diamonds used to assemble the finished Jewelry shipped to Anaya Gems. Gandhi regularly communicated with the manufacturers that shipped Jewelry to Anaya Gems, and he selected the merchandise items to be sent.

27.     In October 2018, the Bank of India and Allahabad Bank (the "Banks") filed an action in New York Supreme Court alleging that Anaya Gems had defaulted on loans and credit agreements with the Banks. The Banks moved for the appointment of a temporary receiver and, on or about November 20, 2018, the judge appointed a receiver, who was responsible for, among other things, managing the company and its assets.

**FRAUDULENT SCHEME**

I. **Defendants' Scheme to Defraud the United States By Underreporting the Value of Imported Jewelry to Evade the Payment of Customs Duties**

28.     Defendants engaged in a deliberate scheme to fraudulently underpay customs duties owed to the Government in connection with Jewelry imported from Hong Kong and Thailand by causing false representations to be made concerning the value of the Jewelry on entry documents filed with CBP and by making, or causing to be made, invoices that did not reflect the actual value of the Jewelry, which were also filed with CBP.

29.      Specifically, Defendants did not report the value of the diamonds, or grossly understated the value of the diamonds, contained in the Jewelry. For example, throughout the Relevant Period, Anaya Gems completely omitted the value of the diamonds included in the Jewelry imported from Manjusaka on entry documents filed by its customs broker with CBP. As

a result, Defendants fraudulently avoided paying the customs duties on the diamonds contained in the Jewelry that they were obligated to pay.

30.     Defendants also, through Anaya Gems' customs broker, submitted invoices from the Jewelry manufacturers to support the declared values which also omitted the value of the diamonds, or grossly understated the value of the diamonds.

31.     The value of the diamonds was generally a significant portion of the value of the imported Jewelry.

32.     Indeed, Defendants had access to and used computer records and accounting systems that reflected the true values of the Jewelry imported from Hong Kong and Thailand, including the actual value of the diamonds that they did not accurately report to CBP. Defendants relied on these records and systems to determine the appropriate prices to charge Anaya Gems' retail customers.  Defendants even maintained records reflecting the difference between the true values of the Jewelry and the understated values that were declared to CBP and reflected in invoices, as well as the duty that Anaya Gems would have been required to pay if it had accurately reported the true value of the Jewelry.

33.     Attached as Exhibits 1 – 5 are reports that were generated from Anaya Gems' computer system that demonstrate how Defendants tracked, and differentiated between, the actual values of the imported Jewelry and the false values that were reflected on the invoices submitted to CBP.  Each row on these reports reflects information on a particular shipment of Jewelry received during the Relevant Period from Manjusaka (Exhibit 1), La Vie (Exhibit 2), Beauty Gems (Exhibit 3), Regal (Exhibit 4), and Gems Creations (Exhibit 5). Specifically, the column labeled "Invoice Tot" typically reflects the value of the Jewelry as reflected on the manufacturer's invoice and was the value reported to CBP; the column labeled "Calc Inv Tot"

8

typically reflects the actual value of the Jewelry, including the actual value of the diamonds; the column labeled "Difference" typically reflects the difference between the values in the "Cacl Inv Tot" and  "Invoice Tot" columns, which represents the unreported value of the diamonds; and the column labeled "Duty" typically reflects the customs duties that Anaya Gems would have been obligated to pay if the true value of the Jewelry had been reported to CBP.

34.     In many instances, upon receipt of a shipment of Jewelry from Hong Kong or Thailand, an Anaya Gems employee would handwrite on the manufacturer's receipt the actual value of the diamonds contained in the imported merchandise so that the company could track this information.  Anaya Gems then provided its customs broker with the versions of these invoices without the handwriting—and without the actual value of the diamonds—and the customs broker submitted those invoices to CBP and relied on them when completing entry summaries.

35.     When shipping Jewelry to Anaya Gems, Manjusaka transmitted a separate document breaking down the cost of each item in the shipment ("Cost Breakdown Sheets), which included, among other things, the cost of the labor, the cost of the metal, and the cost of the diamonds.  The Cost Breakdown Sheets included (i) a row labeled "Invoice," which reflected "0" as the value of the diamonds in the piece and excluded the value of the diamonds from the listed "Grand Total," and (ii) a separate row labeled "Actual," which reflected the true value of the diamonds and included that amount in the "Grand Total."  As an illustrative example, the Cost Breakdown Sheets for the Manjusaka shipment associated with Invoice No. MF171400 is attached as Exhibit 6.  Manjusaka also sent Anaya Gems "Diamond Usage Reports" that specified the diamonds used in each item, the weight of the diamonds, and the total cost of the

diamonds.  As an illustrative example, the Diamond Usage Report associated with Invoice No. MM170051 is attached as Exhibit 7.

36.     Gandhi was involved in and aware of the fraudulent scheme to underreport the value of the Jewelry.

37.     Gandhi was involved in pricing the Jewelry for purposes of selling the merchandise to retailers.  When pricing the Jewelry, Gandhi and Anaya Gems staff took into account the true value of the diamonds, even though they did not declare this value in the entry documents submitted to CBP.

38.     Gandhi was aware of Anaya Gems' obligation to report the actual value of the Jewelry to CBP, which included the full value of the diamonds contained in the pieces.  Gandhi knew that the Jewelry manufacturers provided Anaya Gems with invoices that did not reflect the actual value of the diamonds contained in the Jewelry.  Indeed, when calculating the prices to sell merchandise to retailers, Gandhi used the actual value of the pieces—including the true value of the diamonds—as opposed to the values reflected on the invoices.

39.     Gandhi also knew that the false invoices were used by Anaya Gems' customs broker to record the value of the merchandise declared on the entry summary forms.  Gandhi was aware that the values reported to CBP did not take into account the full value of the diamonds, thereby fraudulently reducing the custom duties owed and paid by Anaya Gems.

40.     For example, Gandhi received reports breaking out the actual value of the diamonds used in pieces included in the Jewelry shipments from Manjusaka and Beauty Gems. Indeed, the reports for the Beauty Gems shipments included one column (called "Real Rate") that reflected the actual value of the diamonds used in the Jewelry, and a separate column (called

"Rate") that reflected the much lower value that Anaya Gems included in the values reported to CBP on the entry summaries.

41.      Defendants intended and expected that CBP would reasonably rely on the false values stated in the entry summaries and invoices when assessing and collecting duties on the Jewelry, and CBP in fact did rely on this false information.

42.      Defendants' knowing fraudulent underreporting of the value of the Jewelry and the submission of false invoices that did not reflect the full value of the Jewelry were material to the Government's assessment and collection of customs duties.  The Government determines the customs duties owed on imported goods based on the reported value of the goods.  If Defendants had accurately reported the value of the Jewelry, Anaya Gems would have been required to pay higher duties on the Jewelry imported from Hong Kong and Thailand.

## II. Examples of Defendants' Fraudulent Scheme to Underreport the Value of Imported Jewelry

43.      The following are examples of Defendants' fraudulent scheme to underreport the value of imported Jewelry to avoid paying customs duties owed.  The below examples are intended only to be illustrative.  In total, there were thousands of instances when Defendants caused false representations to be made concerning the value of imported Jewelry on entry summaries filed with CBP in order to evade the payment of custom duties.

### Example 1:  Shipment from Manjusaka

44.      Anaya Gems received a shipment of earrings containing diamonds from Manjusaka on or about July 30, 2017.  The entry summary submitted to CBP for this Jewelry reported that its value was $94,700.00, and, according to the entry summary, Anaya Gems paid duties of $4,735.00 on the Jewelry.  This entry summary is attached as Exhibit 8.A.

45.     However, according to Anaya Gems' own records, the actual value of the Jewelry was $349,514.00, and Anaya Gems should have paid duties of $19,957.24 on the Jewelry.

46.     The associated invoice for this shipment (Invoice No. MM170018), which would have been attached to the entry summary, lists the value of the shipment as $94,700.00. However, this total does not include the value of the diamonds included in the pieces.  As demonstrated in Exhibit 8.B, an Anaya Gems employee handwrote the actual value of the diamonds associated with the items in the shipment on a version of the invoice for the company's own internal tracking purposes.

47.     Anaya Gems' internal records for this transaction, attached as Exhibit 8.C, reflect the actual value of the imported Jewelry, which was grossly understated on the entry summary, as well as the duty that Anaya Gems was obligated to pay.  Specifically, the "Cal Invce Total" (which reflects the actual value of the Jewelry, including the value of the diamonds) is listed as $349,514.00; the "Difference" (which reflects the difference between the actual and reported value of the Jewelry) is listed as $254,814.00; and the "Less Duty" (which reflects the customs duty owed if the true value of the Jewelry had been reported) is listed as $19,957.24.  Indeed, the sum of the handwritten numbers on Manjusaka's invoice (Exhibit 8.B) equals $254,814.00, which is the value of the diamonds not reported in the entry summary.

### Example 2:  Shipment from Beauty Gems

48.     Anaya Gems received a shipment of pendants and earrings containing diamonds from Beauty Gems on or about June 17, 2015.  The entry summary submitted to CBP for this Jewelry reported that its value was $65,768.00, and, according to the entry summary, Anaya Gems paid duties of $3,570.41 on the Jewelry.  This entry summary is attached as Exhibit 9.A.

49.     However, according to Anaya Gems' own records, the actual value of the Jewelry was $120,008.31, and Anaya Gems should have paid duties of $6,852.47 on the Jewelry.  In this instance, Anaya Gems included a portion of the value of the diamonds in the declared value, but far less than the actual value.

50.     The three associated invoices for this shipment (Invoice Nos. FL-1521/2015A, FL-1521/2015B, and FL-1522/2015), which would have been attached to the entry summary, list the total value of the shipments as $65,767.73 ($56,401.24 + $9,308.80 + $57.69).  As demonstrated in Exhibit 9.B, each invoice includes an entry labeled "Less customer goods," which represents the component of the total value that Beauty Gems represented constituted the value of the diamonds used in the Jewelry and was included in the declared value.  However, the "Less customer goods" values did not reflect the full values of the diamonds, which were significantly greater than the amounts listed.

51.     Anaya Gems' internal records for these transactions, attached as Exhibit 9.C, reflect the actual value of the imported Jewelry, which was grossly understated on the entry summary, as well as the duty that Anaya Gems was obligated to pay.  Specifically, the "Cal Invce Total" (which reflects the actual value of the Jewelry, including the value of the diamonds) reflects a total value of $120,008.31 ($106,655.08 + $13,268.15 + $85.08); the "Difference" (which here reflects the actual full value of the diamonds) reflects a total value of $90,621.28 ($82,616.11 + $7,957.23 + $47.94); and the "Less Duty" (which reflects the customs duty owed if the true value of the Jewelry had been reported) reflects a total value of $6,852.47 ($6,090.01 + $757.60 + $4.86).

**Example 3: Shipment from Regal**

52.      Anaya Gems received a shipment of necklaces, bracelets, earrings, and bangles containing diamonds from Regal on or about June 6, 2016.  The entry summary submitted to CBP for this Jewelry reported that its value was $20,152.00 and, according to the entry summary, Anaya Gems paid duties of $1,007.60 on the Jewelry.  This entry summary is attached as Exhibit 10.A.

53.      However, according to Anaya Gems' own records, the actual value of the Jewelry was $24,512.00, and Anaya Gems should have paid duties of $1,277.08 on the Jewelry.

54.      The two associated invoices for this shipment (Invoice Nos. 1606025 and 1606026), which would have been attached to the entry summary, list the total value of the shipment as $20,152.65 ($20,092.37 + $60.28)  However, this total does not include the value of the diamonds in the pieces.  As demonstrated in Exhibit 10.B, an Anaya Gems employee handwrote the actual value of these diamonds on a version of the invoice for the company's own internal tracking purposes.  At the bottom of one of the invoices, the employee appears to have written "$4419.63 Diam."

55.      Anaya Gems' internal records for these transactions, attached as Exhibit 10.C, reflect the actual value of the imported Jewelry, which was grossly understated on the entry summary, as well as the duty that Anaya Gems was obligated to pay.  Specifically, the "Cal Invce Total" (which reflects the actual value of the Jewelry, including the value of the diamonds) reflects a total value of $24,580.28 ($24,512.00 + $68.28); the "Difference" (which reflects the difference between the actual and reported value of the Jewelry) reflects a total value of $4,419.63; and the "Less Duty" (which reflects the customs duty owed if the true value of the Jewelry had been reported) reflects a total value of $1,280.22 ($1,277.08 + $3.14).  Indeed, the

handwritten note on Regal's invoice reflecting the total value of the diamonds, $4,419.63, is the same as the "Difference" listed in Anaya Gems' internal records, and this represents the value of the diamonds that was not fully reported in the entry summary.

### CLAIM FOR RELIEF

**Violations of the False Claims Act:  Reverse False Claims**
**(31 U.S.C. § 3729(a)(1)(G))**

56.     The Government incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

57.     The Government seeks relief against Defendants under 31 U.S.C. § 3729(a)(l)(G).

58.     Through the acts and omissions set forth above, Defendants knowingly made, used, or caused to be made or used, false records and statements material to an obligation to pay or transmit money or property, in the form of customs duties owed to the United States, and knowingly concealed and knowingly and improperly avoided or decreased an obligation to pay or transmit money or property, in the form of customs duties owed, to the United States.

59.     The Government incurred losses in the form of customs duties underpaid by Defendants because of their wrongful and fraudulent conduct.

60.     As a result of Defendants' failure to accurately report to CBP the true value of Jewelry imported from Hong Kong and Thailand and the submission of false invoices to CBP, the Government has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus a civil penalty for each violation.

WHEREFORE, the Government respectfully requests that judgment be entered in its favor and against Defendants as follows:

a.      For a sum equal to treble damages and civil penalties to the maximum amount allowed by law; and

b.      Granting the Government such further relief as the Court may deem proper.

Dated: New York, New York
       July 30, 2020

                                AUDREY STRAUSS
                                Acting United States Attorney for the
                                Southern District of New York


                        By:    /s/ Jeffrey Powell
                                JEFFREY K. POWELL
                                Assistant United States Attorney
                                86 Chambers Street, Third Floor
                                New York, New York 10007
                                Telephone:  (212) 637-2706
                                Email: Jeffrey.Powell@usdoj.gov
                                *Attorney for the United States of America*